**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3720-14T2

LAVERN SANDERS,

    Plaintiff-Appellant,

v.

DIVISION OF CHILDREN AND
FAMILY SERVICES and
JONATHAN REID,

    Defendants-Respondents.

_____

Submitted May 17, 2017 — Decided July 26, 2017

Before Judges Simonelli, Carroll and Farrington.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1146-13.

Law Offices of Louis A. Zayas, L.L.C., attorneys for appellant (Mr. Zayas, of counsel and on the briefs; Alex Lee, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jennifer I. Fischer, Deputy Attorney General, on the brief).

PER CURIAM

In this employment matter, plaintiff Lavern Sanders appeals from the March 6, 2015 Law Division order, which granted summary judgment to defendants Division of Children and Family Services (DCF) and Jonathan Reid, and dismissed her complaint with prejudice. We affirm in part, and reverse in part.

I.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

In November 2006, plaintiff began her employment with DCF as a Family Service Specialist Trainee. In September 2007, she was promoted to Family Service Specialist 2 (FSS 2).

In 2007, plaintiff began a romantic relationship with another DCF employee, Reid. Reid was a DCF Family Service Specialist Supervisor, but he never supervised or worked directly with plaintiff. Plaintiff and Reid dated for approximately six months. None of their coworkers knew they were dating. Plaintiff allegedly ended the relationship in September 2007. She last spoke to Reid in September 2008 and last saw him in 2010.

A-3720-14T2

In July 2008, a judicial officer found probable cause to issue a complaint-warrant against plaintiff, charging her with using Reid's personal identifying information to open a Discover credit card account in July 2007, in violation of N.J.S.A. 2C:21-17(a)(4) and N.J.S.A. 2C:21-6(d)(2). Plaintiff allegedly made herself and her mother authorized users of the credit card, had the bill sent to her home mailing address, and used the card to accumulate $4,847.40 in charges.

Plaintiff was arrested on October 8, 2008. She claimed that Reid falsely accused her of identity theft and credit card fraud in retaliation for ending their relationship. Reid also filed a civil action against plaintiff, which settled in June 2009, after plaintiff agreed to pay $4500 in installment payments.

On October 17, 2008, DCF served plaintiff with a preliminary notice of disciplinary action (PNDA), charging her with impersonation, theft of identity crime, and credit card crime. DCF suspended plaintiff with pay and sought her removal. On October 22, 2008, DCF served plaintiff with a second PNDA, charging her with the same offenses, suspending her without pay effective October 22, 2008, and seeking her removal. On March 5, 2009, DCF served plaintiff with a third PNDA, charging her with conduct unbecoming a public employee and improper conduct that violates common decency. On April 7, 2009, DCF sustained the charges in

the third PDNA, and served plaintiff with a final notice of disciplinary action (FNDA), removing her, effective October 22, 2008.

Following a bench trial on the criminal charges, on March 23, 2009, the court acquitted plaintiff of the criminal charges. DCF eventually rescinded plaintiff's removal and reinstated her as a FSS 2, effective January 4, 2010, with back pay and benefits to October 22, 2008.

Plaintiff returned to work on January 14, 2010. She claimed that her supervisors began retaliating against her and created a hostile work environment because she had dated Reid; Reid told them she had stolen his credit card and used his identity; Reid pressed criminal charges against her and she was arrested; and they did not believe she was acquitted of the charges. Plaintiff maintained that her supervisors were trying to get her terminated because they believed Reid, and DCF did not discipline Reid for making false allegations against her.

Plaintiff pointed to several instances of alleged retaliation and hostile work environment. The first involved discipline she received upon returning to work. On January 19, 2010, DCF served plaintiff with a PNDA, charging her with and seeking her removal for inability to perform job duties, and suspending her with pay. The charge stemmed from plaintiff's lack of a valid New Jersey

driver's license. Plaintiff was required to operate State vehicles in performing her job duties and department policy required her to have a valid driver's license. Prior to returning to work, she signed a document certifying that she possessed a valid driver's license; however, her driver's license was suspended. DCF subsequently withdrew the PNDA after plaintiff had her driver's license reinstated.

Plaintiff claimed that in April 2010, her supervisor twice reprimanded her for improper attire but did not reprimand other employees for wearing similar clothing. However, plaintiff admitted that after receiving a copy of the dress code, she continued to come to work improperly dressed and once wore an NBA logo tracksuit to court. She also admitted she was never disciplined for this incident and never reprimanded for any dress code violation after April 2010.

Plaintiff claimed that in April 2010, she was denied a position in the Special Response Unit (SPRU). She alleged that everyone in the department received an email about a position opening in the SPRU, except her, which caused her to submit an application in May 2010, that was denied for untimeliness. However, she admitted she did not apply for a SPRU position after 2010.

Plaintiff claimed that in May 2010, she was threatened with disciplinary action for parking a State vehicle on the street in front of the building, while other employees parked there with no problems. However, she admitted that DCF employees are required to park State vehicles in the parking lot one block from the building. She also admitted she was never disciplined for this incident and had no issues regarding parking after May 2010. Plaintiff also claimed that in August 2010, her supervisor accused her of being involved in a near accident with a State vehicle. However, she admitted she was not disciplined for this incident and had no other incidents or accusations regarding State vehicles after August 2010.

Plaintiff claimed that in June 2010, she was denied mandatory training. However, she was removed from the training session because she had to complete work on her caseload. She admitted that staff members were promptly rescheduled to attend any missed training sessions; she was rescheduled for and attended training sessions in September 2010; the rescheduled training included the same courses as the June 2010 training session; and she was not denied training after June 2010.

Plaintiff claimed that in 2010, she was denied the opportunity to adopt T.H. She had submitted the required documents to adopt T.H. as a DCF worker, but was advised on November 8, 2010 that per

6

Labor Relations, she was to have no contact with T.H. Plaintiff alleged she was defamed by a caseworker-supervisor's comment to her boyfriend that she previously and currently had pending charges against her and T.H. could not be left alone with her at any time, and this information was placed into T.H.'s file. Plaintiff had no issues regarding T.H. after December 2010.

Plaintiff testified at her deposition that all acts of retaliation and hostile work environment occurred on or before 2010; Reid had no involvement in any of those acts; and Reid did not supervise her. However, she claimed that the retaliation and hostile work environment continued after 2010, when DCF served her with a PNDA on March 30, 2011, seeking her removal; denied her sick leave in April 2011; and rejected her as a foster parent in May 2011.

Plaintiff suffers from sarcoidosis and mental health issues, and was on approved leave from October 5, 2010 through October 18, 2010. She returned to work, but left again on December 8, 2010. She used sick leave from December 9 to December 24, 2010, and administrative leave from December 28 to December 30, 2010. She submitted a doctor's note verifying her sick leave for December 9 to December 22, 2010, and submitted a second doctor's note stating she could return to work on January 6, 2011.

Plaintiff did not return to work on January 6, 2011, and did not report her absence, as required by DCF policy. Her doctor placed her on short-term disability leave until February 28, 2011. DCF instructed plaintiff to complete and submit the required request for paid leave of absence and provide acceptable medical verification, but plaintiff failed to comply. As a result, DCF considered her leave unauthorized.

Plaintiff did not return to work on February 28, 2011, and did not report her absence. On March 30, 2011, DCF served her with a PNDA, charging her with unauthorized absences; failure to follow established procedures for documenting absences from work; failure to follow established procedures for reporting absences from work; abuse of sick leave; insubordination; chronic or excessive absenteeism or lateness; and resignation not in good standing for being absent for five or more consecutive business days without supervisor approval. DCF sought plaintiff's removal, effective March 7, 2011. DCF denied plaintiff's subsequent requests for paid leave of absence because she was on unauthorized leave and pending removal pursuant to the PNDA.

A hearing officer sustained the charges. On December 28, 2011, DCF served plaintiff with a FNDA, removing her effective March 7, 2011. On April 29, 2013, an arbitrator converted the sanction to a five-day suspension for failing to follow proper

policies and procedures for her leave of absence and insubordination for failing to follow DCF directives, and reinstated plaintiff.

Prior to her reinstatement, in May 2011, plaintiff sought to become a foster parent for K.T. DCF denied her request because she was not an employee in good standing at the time. Plaintiff believed the denial was in retaliation for filing complaints with the Equal Employment Opportunity Commission (EEOC). She claimed that she had filed EEOC complaints in 2009, 2010, 2011, and 2012; however, the EEOC only confirmed receiving complaints on January 28, 2011, alleging age discrimination, and on October 12, 2011, alleging age and disability discrimination and retaliation. The EEOC attempted to contact plaintiff to acquire additional information about both complaints, and she refused to provide any information about the second complaint and said she would be consulting an attorney. As a result, the EEOC dismissed both complaints, but issued plaintiff right to sue letters. Plaintiff provided no evidence that DCF, her supervisors, or Reid were aware of her EEOC complaints or that EEOC had contacted them.

Plaintiff was reinstated and returned to work in June 2013. She claimed that her supervisor harassed her by giving her cases back to her with corrections, and retaliated against her because of her prior complaints and because the supervisor heard from

9

other supervisors that she was stubborn and did not like to follow orders.

Lastly, plaintiff was previously assigned to the Intake Section. In October 2014, she was transferred to the Permanency Section. She claimed the position was a hardship on her due to her disability; she was purposely given no work assignments; and her responsibilities were taken away from her when her co-workers, both male and female, were facing enormous workloads.

Plaintiff only deposed Reid. Reid testified that he did not know plaintiff's supervisors and had no conversations with them about her. Except for her self-serving statements, plaintiff provided no competent evidence supporting her claims of continued retaliation, hostile work environment, and gender- or disability-based discrimination in 2013 and 2014.

On March 6, 2013, plaintiff filed a complaint against all defendants, asserting claims for: gender- and disability-based unlawful termination, retaliation, and hostile work environment in violation of the New Jersey Law Against Discrimination, (NJLAD) N.J.S.A. 10:5-1 to -49; and violation of her right to free speech and to petition for redress of grievances, in violation of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2. Plaintiff sued Reid in his official and individual capacity, and asserted

separate claims against him for malicious prosecution and abuse of process.

Defendants filed a motion for summary judgment. In a comprehensive oral opinion, the motion judge found the two-year statute of limitations, N.J.S.A. 2A:14-2, barred claims pre-dating March 6, 2011, and the continuing violation doctrine did not apply because plaintiff testified that all of the retaliation and harassment occurred on or before 2010, and plaintiff failed to cite to any discriminatory actions or evidence of hostile work environment after 2010. The judge also found that plaintiff had no contact with Reid since 2010.

Addressing the merits, the judge found there was no evidence supporting plaintiff's NJLAD and NJCRA claims against Reid. Regarding plaintiff's gender discrimination claim, the judge found no evidence that any of the disciplinary actions taken against plaintiff were gender-based; no evidence that DCF did not discipline Reid for making false allegations against her; and DCF had legitimate business reasons for all of the disciplinary actions. The judge concluded that plaintiff failed to establish a prima facie case of gender-based discrimination, or a causal connection between any adverse employment action and her gender.

Regarding plaintiff's disability discrimination claim, the judge found that plaintiff failed to show she was performing her

duties as a FSS 2 at a level that met her employer's legitimate expectations. The judge also found that DCF had a legitimate, non-pretextual business reason for removing her, effective March 7, 2011.

The judge found that except for plaintiff's subjective beliefs, she failed to provide any evidence of a hostile work environment. The judge found no evidence: supporting plaintiff's claims that Reid ignited a series of harassments by DCF employees against her; establishing any connection with Reid and her alleged harassment based on gender or disability; or establishing that she was harassed due to her disability. The judge also found no evidence of any defamatory comments made about plaintiff, and no evidence that the alleged discriminatory acts in 2011 and 2013 were gender- or disability-based.

Regarding plaintiff's retaliation claim based on filing of the EEOC complaints, the judge found plaintiff could not prove she was engaged in a protected activity known to her employer because there was no evidence that anyone at DCF knew she had filed those complaints. The judge also found no evidence of a causal link between the EEOC complaints and her March 7, 2011 removal or denial of her request to be a foster parent to K.T. The judge determined there was no evidence whatsoever that the terms, conditions, or

12

privileges of plaintiff's employment were adversely affected because she was denied being a foster parent.

The judge found no evidence that Reid aided or abetted the alleged retaliation. The judge determined that because DCF did not violate the NJLAD, Reid could not be held liable as an aider or abettor. The judge also found, incorrectly, that plaintiff's malicious prosecution and abuse of process claims against Reid were barred for failure to file a notice of tort claim and by the two-year statute of limitations.

The judge found that plaintiff's CRA claims of violation of her right to free speech and to petition for redress of grievances could not be brought against a public employer, and there was no evidence that plaintiff complained to DCF or any supervisor about her adverse treatment. The judge also found that plaintiff's claims of a CRA violation regarding her January 2011 EEOC complaint were barred by the two-year statute of limitations, and her October 2012 EEOC complaint post-dated her allegations of retaliation and hostile work environment.

Lastly, the judge dismissed plaintiff's punitive damages claim for plaintiff's failure to show any acts of wanton, reckless, and malicious, evil-minded or particularly egregious acts on the part of defendants or any DCF employee. On appeal, plaintiff challenges all of the judge's findings.

We review a ruling on a motion for summary judgment de novo, applying the same standard governing the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). Thus, we consider, as the motion judge did, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citation omitted). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). For mixed questions of law and fact, we give deference to the supported factual findings of the trial court, but review "de novo the lower court's application of any legal rules to such factual findings." State v. Pierre, 223 N.J. 560, 576-77 (2015) (citations omitted).

## II.

We first address the dismissal of plaintiff's claims based on the statute of limitations. The statute of limitations for NJLAD claims is two years. Alexander v. Seton Hall Univ., 204

N.J. 219, 228 (2010). "Determining when the limitation period begins to run depends on when the cause of action accrued, which in turn is affected by the type of conduct a plaintiff alleges to have violated the LAD." Ibid. Here, plaintiff alleges retaliation and hostile work environment.

"Generally stated, discrete acts of discrimination, such as termination or a punitive retaliatory act, are usually readily known when they occur and thus easily identified in respect of timing." Ibid. "Hence, their treatment for timeliness purposes is straightforward: 'A discrete retaliatory or discriminatory act occurs on the day that it happens.'" Ibid. (quoting Roa v. Roa, 200 N.J. 555, 567 (2010)). "Discriminatory termination and other similar abrupt, singular adverse employment actions that are attributable to invidious discrimination, prohibited by the LAD, generally are immediately known injuries, whose two-year statute of limitations period commences on the day they occur." Ibid. Discrete acts are those "such as termination, failure to promote, denial of transfer, or refusal to hire" and for purposes of a statute of limitations, occurs on the day it happens. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 114, 122 S. Ct. 2061, 2070, 2073, 153 L. Ed. 2d 106, 120, 122 (2002). Similarly, a transfer is a discrete act in line with the examples cited in Morgan. Id. at 114, 122 S. Ct. at 2073, 153 L. Ed. 2d at 122.

Alternatively, a plaintiff may have a viable NJLAD claim under the continuing violation doctrine, which is "a judicially created doctrine . . . [that] has developed as an equitable exception to the statute of limitations" in NJLAD cases. Bolinger v. Bell Atl., 330 N.J. Super. 300, 306 (App. Div.), certif. denied, 165 N.J. 491 (2000). The continuing violation doctrine provides that "when the complained-of conduct constitutes 'a series of separate acts that collectively constitute one unlawful employment practice[,]' the entire claim may be timely if filed within two years of 'the date on which the last component act occurred.'" Alexander, supra, 204 N.J. at 229 (quoting Roa, supra, 200 N.J. at 567). "The 'continuing violation' doctrine, recognized under federal Title VII law as an appropriate equitable exception to the strict application of a statute of limitations, provided the analytic framework that has been used in the assessment of a LAD hostile workplace environment claim." Ibid.

Our Supreme Court has "specifically adopted the federal continuing violation equitable doctrine to determine the accrual date of a cause of action in a hostile workplace course-of-conduct claim." Ibid. (citing Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 18-19 (2002)). The Court noted that the doctrine addresses the "factual circumstances of an ongoing workplace harassment claim that involve[s] alleged incidents of both

16                                                    A-3720-14T2

discrete and non-discrete acts of discriminatory workplace hostility." Ibid. (citing Shepherd, supra, 174 N.J. at 21). The Court stated that Morgan had clarified the distinction between discrete acts of discrimination and hostile work environment claims, stating that "hostile work environment claims by '[t]heir very nature involve[] repeated conduct' of varying types and that '[s]uch claims are based on the cumulative effect of individual acts.'" Ibid. (quoting Morgan, supra, 536 U.S. at 115, 122 S. Ct. at 2073-74, 153 L. Ed. 2d at 123). The Court also stated that

> [r]ecognizing the beneficial effect of adopting Morgan's approach to such difficult hostile work environment scenarios where an employee may be subjected to ongoing indignities, we held in Shepherd . . . that "a victim's knowledge of a claim is insufficient to start the limitations clock so long as the defendant continues the series of non-discrete acts on which the claim as a whole is based."
>
> [Id. at 229-30 (quoting Shepherd, supra, 174 N.J. at 22).]

The Court continued that "[s]tated differently, knowledge of hostility and of ongoing acts consistent with that hostility in such a setting is insufficient to trigger the limitation timeframe within which a [NJ]LAD cause of action must be filed." Id. at 230. The Court warned, however, "that '[w]hat the doctrine does not permit is the aggregation of discrete discriminatory acts for the purposes of reviving an untimely act of discrimination that

the victim knew or should have known was actionable.'" Ibid. (quoting Roa, supra, 200 N.J. at 569).

To establish a continuing violation based on a series of discriminatory acts, our Supreme Court has stated that two questions must be considered:

> First, have plaintiffs alleged one or more discrete acts of discriminatory conduct by defendants? If yes, then their cause of action would have accrued on the day on which those individual acts occurred. Second, have plaintiffs alleged a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment? If yes, then their cause of action would have accrued on the date on which the last act occurred, notwithstanding "that some of the component acts of the hostile work environment [have fallen] outside the statutory time period."
>
> [Shepherd, supra, 174 N.J. at 21 (emphasis added) (quoting Morgan, supra, 536 U.S. at 116, 122 S. Ct. at 2074, 153 L. Ed. 2d at 124).]

Here, plaintiff relies on the continuing violation doctrine to sweep in as timely all of the retaliation and hostile work environment that allegedly occurred during a six-year period.

The continuing violation doctrine does not permit the aggregation of discrete retaliatory acts for the purpose of reviving an untimely act of discrimination that plaintiff knew or should have known was actionable. Thus, each time plaintiff was

terminated, disciplined, or reprimanded, she knew or should have known that she had been subjected to discriminatory retaliation and should have filed her retaliation claim within two years thereof. When she did not do so, that retaliation claim was lost and not subject to the continuing violation doctrine. Accordingly, plaintiff's retaliation claims pre-dating March 6, 2011 are time-barred.

We reach a different conclusion as to plaintiff's hostile work environment claim. Plaintiff alleged a pattern or series of non-discrete acts which, when viewed cumulatively, could constitute a hostile work environment. When a plaintiff alleges a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment, the cause of action accrues on the date of the last act, even if some of the component acts of the hostile work environment claim fell outside the two-year period. Roa, supra, 200 N.J. at 568 (quoting Shepherd, supra, 174 N.J. at 21). Plaintiff's deposition testimony and certification submitted in opposition to the summary judgment motion suggest that from 2008 to 2014, she was subjected to a pattern or series of acts that when viewed cumulatively could constitute a hostile work environment. Accordingly, her hostile work environment claim was

19

timely as a continuing violation. Nevertheless, that claim was properly dismissed on the merits.

The burden of proving discrimination "remains with the employee at all times." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005). To establish a cause of action under the NJLAD based on hostile work environment, the plaintiff must satisfy four elements:

> Specifically, [plaintiff] must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive. Within that framework, a court cannot determine what is "severe or pervasive" conduct without considering whether a reasonable person would believe that the conditions of employment have been altered and that the working environment is hostile. Thus, the second, third, and fourth prongs are, to some degree, interdependent.
>
> [Shepherd, supra, 174 N.J. at 24 (citations omitted).]

Plaintiff cannot satisfy the first element. The record is devoid of evidence that she was subjected to a hostile work environment because of her gender or disability. Accordingly, defendants were entitled to summary judgment on plaintiff's hostile work environment claim as a matter of law.

Defendants were also entitled to summary judgment as a matter of law on plaintiff's post-March 6, 2011 retaliation claims. To prove a prima facie case of retaliation, plaintiff must show that: (1) she was engaged in a protected activity known to the defendant; (2) she was thereafter subjected to an adverse employment decision by the defendant; and (3) there was a causal link between the protected activity and the adverse employment consequence. Victor v. State, 203 N.J. 383, 409 (2010). Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a "legitimate[,] non-retaliatory reason" for the decision. Jamison v. Rockaway Twp. Bd. of Educ., 242 N.J. Super. 436, 445 (App. Div. 1990). If the defendant satisfies this burden, the plaintiff must then demonstrate that a retaliatory intent, not the employer's stated reason, motivated the employer's action, proving the employer's articulated reason was merely a pretext for discrimination. Ibid.

Plaintiff claims she was engaged in protected activity by filing the EEOC complaints. However, there was no evidence whatsoever that defendants were aware she had filed those complaints or that the EEOC had contacted DCF, Reid, or any DCF employees. Because plaintiff cannot establish that she was engaged in a protected activity known to defendants, she also cannot

establish a causal link between her protected activity and the alleged retaliatory acts that occurred after March 6, 2011.

## IV.

Plaintiff's disability discrimination claim also fails as a matter of law. The NJLAD prohibits employment discrimination on the basis of a disability "unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. 10:5-4.1; see also Potente v. Cty. of Hudson, 187 N.J. 103, 110 (2006). To establish a prima facie case of disability discrimination, the plaintiff must show that: (1) she was handicapped or disabled within the meaning of the NJLAD; (2) she was qualified to perform the essential functions of the position of employment, with or without accommodation;[1] (3) she suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position. Gerety v. Atl. City Hilton Casino Resort, 184 N.J. 391, 399 (2005).

Plaintiff did not establish that she suffered an adverse employment action because of her disability and that DCF sought

---

[1] We decline to address plaintiff's argument that DCF failed to accommodate her disability. Plaintiff did not allege a failure to accommodate in her complaint or raise this issue before the motion judge, and the issue is not jurisdictional in nature nor does it substantially implicate the public interest. Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citation omitted).

another to perform the same work after she was removed from the position. There is no evidence that any of the adverse employment actions taken against plaintiff were based on her disability.

V.

We next address plaintiff's aiding and abetting claim against Reid. "[I]t is unlawful '[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the NJLAD],' N.J.S.A. 10:5-12[(e)], and such conduct may result in personal liability." Tarr v. Ciasulli, 181 N.J. 70, 82-83 (2004). In order to hold an employee liable as an aider or abettor, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation. Id. at 84 (citations omitted).

Plaintiff did not establish that DCF committed any wrongful act, and even if she did, there is no evidence that Reid assisted DCF or knew DCF had engaged in illegal or tortious activity toward plaintiff. Accordingly, plaintiff's aiding and abetting claim against Reid was properly dismissed as a matter of law.

23

## VI.

We next address the dismissal of plaintiff's NJCRA claims. Plaintiff alleges two NJCRA violations: the violation of her right to free speech and her right to petition for grievances.

The NJCRA authorizes a private cause of action for the enforcement of an individual's civil rights. N.J.S.A. 10:6-1 to -2. Under N.J.S.A. 10:6-2(c) only a "person acting under color of law," may be sued for damages. Perez v. Zagami, LLC, 218 N.J. 202, 210-14 (2014).

The State is not a "person" within the meaning of the NJCRA and is immune from suit under the NJCRA. Brown v. State, 442 N.J. Super. 406, 426 (App. Div. 2015). This is consistent with United State Supreme Court precedent interpreting the analogous federal Civil Rights Act, holding that "neither a State nor its officials acting in their official capacities are 'persons'" within the meaning of the federal statute. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); see also Brown, supra, 442 N.J. Super. at 426. Because DCF is an arm of the State, see N.J.S.A. 9:3A-3 (establishing DCF in the Executive Branch of the State government), it is not a "person" subject to a private cause of action and is immune from suit under the NJCRA.

While Reid may be deemed a "person" under the NJCRA, he cannot be sued under the NJCRA for acts taken in his individual capacity; he must be acting under the color of law. Plaintiff claims Reid acted under color of law in provoking the retaliatory acts against her.

There is no evidence that DCF or any of its employees violated plaintiff's civil rights. Even if there was such evidence, there is no evidence that Reid interfered or attempted to interfere with those rights. As for plaintiff's arguments that Reid acted under color of law in provoking retaliatory acts against her, as discussed supra, there is no evidence of retaliation and hostile work environment by DCF or any of its employees. Accordingly, plaintiff's NJCRA claims against DCF and Reid were properly dismissed.

Because plaintiff failed to establish any claim against DCF, her punitive damages claim against the agency was properly dismissed. See N.J.S.A. 2A:15-5.12(a).

VII.

Plaintiff's claims against Reid for malicious prosecution and abuse of process were improperly dismissed. Plaintiff brought these claims against Reid in his individual capacity, not in his capacity as a public employee. Thus, those claims are not subject to a tort claim notice. See N.J.S.A. 59:8-8 (barring recovery

against a public entity or public employee for failure to timely file a notice of tort claim); Gazzillo v. Greib, 398 N.J. Super. 259, 264 (App. Div.) (noting "there must be some nexus between the wrong that is complained of and the defendant's public employment in order to mandate that a notice of claim be filed before suit may be instituted"), certif. denied, 195 N.J. 524 2008).

In addition, a six-year statute of limitations applies to malicious prosecution and abuse of process claims. Earl v. Winne, 14 N.J. 119, 132 (1953). Consequently, plaintiff's claims against Reid, individually, of malicious prosecution and abuse of process based on the legal proceedings in 2008 and 2009 were timely.

Because plaintiff's malicious prosecution and process of process claims survive summary judgment, so too, does plaintiff's claim against Reid for punitive damages. However, we express no view as to the merits of any of these remaining claims.

Affirmed in part, reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION